IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In the Matter of: | ) | Case No. BK20-40579 |
| | ) | |
| RICHARD A. GLODOWSKI, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**Order Granting Motion for Sanctions**

This matter is before the court on a motion to impose sanctions against debtor Richard Glodowski filed by Nicole Glodowski, which debtor resisted. (Doc. #56; Doc. #65). Trial was held on February 24, 2021. Richard Register appeared for debtor. Thomas Helget appeared for Mrs. Glodowski. The court received evidence as detailed in Doc. #100.

**Findings of Fact**

Debtor and Nicole Glodowski are married. Mrs. Glodowski filed to dissolve the marriage in Nebraska state court in February 2019. In that case, she filed a motion to compel debtor to sell real estate, which was set to be heard on April 29, 2020. (Doc. #56). Two days before the hearing, on April 27, debtor filed a Chapter 7 bankruptcy petition. Neither debtor nor Mrs. Glodowski filed a motion for relief from stay to proceed with the dissolution.

Debtor attended his 341 meeting on July 7, 2020. (Doc. #60). During the meeting debtor admitted he failed to schedule assets and undervalued assets he did schedule. The Chapter 7 trustee instructed debtor to provide additional information and to amend the bankruptcy schedules. Debtor did not comply.[1] The Chapter 7 trustee also informed debtor he would liquidate debtor's assets in the bankruptcy case to pay creditors.

On July 31, 2020, the United States Trustee filed a complaint to deny debtor a discharge pursuant to 11 U.S.C. §§ 727(a)(2), 727(a)(4)(A), and 727(a)(4)(D). (Doc. #23). The trustee alleged debtor's schedules contained several errors of which debtor was aware. Ten months before he filed his bankruptcy petition, debtor answered interrogatories in the dissolution action. The interrogatory answers materially differed from his schedules. In his schedules debtor undervalued three parcels of real estate by a total of $444,000; he failed to schedule several large tools and equipment worth over $50,000, including a tractor, a grinder, a scraper, a skid loader, a snowmobile trailer, a tilt trailer, and a mower; and he failed to schedule digital currency and membership interests in various

---

[1] Debtor ultimately amended his schedules in February 2021, as part of a stipulation to dismiss this case. The stipulation granted Mrs. Glodowski relief from stay to proceed with the dissolution of marriage action in state court. (Doc. #64; Doc. #72-82).

1

entities. Debtor did not respond to the adversary proceeding. Default judgment was entered on September 24, 2020, and debtor was denied a discharge. (Doc. #23; Doc. #24). As a result, the court has found debtor hindered administration of the estate, knowingly and fraudulently made a false oath on his schedules and during his 341 meeting, and knowingly and fraudulently represented his assets and the values thereof.

Five proofs of claim were filed in debtor's case, only two of which were on account of unsecured debt. Discover Bank filed an unsecured claim for $4,355.81. Mrs. Glodowski filed the other unsecured claim for $913,885, which she calculated to be her half of the marital estate plus adjustments and an equalization payment. The adjustments included purported non-marital contributions of $569,195 to real estate owned solely by debtor and a $20,000 down payment on a motor vehicle. She also sought $24,862 in attorney's fees incurred in the dissolution action.

Mrs. Glodowski negotiated with the Chapter 7 trustee and agreed to purchase 80 acres of debtor's real estate and two motor vehicles. (Doc. #30; Doc. #31). The trustee filed two motions to sell on November 6, 2020. The real estate was scheduled to be worth $250,000 and subject to a lien of $335,850. Mrs. Glodowski offered $1,500 and agreed to take the real estate subject to the lien. However, according to the discharge adversary proceeding, the real estate was listed for sale for $440,000. Mrs. Glodowski did not offer money for the two vehicles. Instead, she agreed to quitclaim any interest she had in two jet skis.

Debtor obtained new bankruptcy counsel in mid-November. On November 15, 2020, debtor filed a motion to dismiss his case without prejudice because he "no longer wishes to proceed with this bankruptcy case". (Doc. #37). Debtor also resisted the trustee's motions to sell. (Doc. #39; Doc. #40). The United States Trustee, the Chapter 7 trustee, and Mrs. Glodowski all resisted the motion to dismiss. (Doc. #42; Doc. #44; Doc. #45). Mrs. Glodowski asserted the dismissal was designed to prevent her from purchasing the real estate and vehicles. (Doc. #45). After a preliminary hearing, debtor, the U.S. Trustee, the Chapter 7 trustee, and Mrs. Glodowski stipulated debtor's case could be dismissed. (Doc. #64). As part of the stipulation, debtor was to file amended schedules, pay Discover Bank's unsecured claim, and pay the Chapter 7 trustee for his time.

On December 31, 2020, before entering the stipulation for dismissal, Mrs. Glodowski filed a motion for sanctions under Fed. R. Bankr. P. 9011. (Doc. #56). She asserts the case was filed to delay her divorce proceedings and for harassment. She requests sanctions in the form of attorney's fees.

Mrs. Glodowski's bankruptcy counsel, Trev Peterson, was the only one who testified during the hearing on the motion for sanctions. Mr. Peterson has practiced bankruptcy law since 1982. He does not practice divorce law and did not represent Mrs. Glodowski in her dissolution action. He testified as to the scope of his representation, the services he provided, and the amount he charged, which totaled $17,706 in legal fees and $444.40

in expenses through February 14, 2021.[2] (Doc. #93). The fees were higher than Mr. Peterson charges in a typical Chapter 7 case because the case involved additional work. Mr. Peterson reviewed information from the dissolution action to compare it to debtor's inaccurate schedules. He provided the Chapter 7 trustee accurate information after debtor failed to cooperate. He prepared for debtor's 341 meeting twice because it was continued after debtor did not provide information requested by the trustee. He monitored several filings, including the United States Trustee's discharge complaint. He also negotiated regarding Mrs. Glodowski's offer to purchase the 80 acres and vehicles and regarding the stipulation to dismiss the case.

Although debtor was eligible to file under Chapter 7, according to Mr. Peterson, the filing "did not make sense". Debtor was not insolvent under either definition of insolvency. He had sufficient assets to pay his debts and was paying them as they came due. In addition, Mrs. Glodowski's claim was "essentially" the only unsecured claim in the case. Debtor did not testify as to why he filed.

## Conclusions of Law

Debtor suggests this court should not consider sanctions because Mrs. Glodowski should seek them in her dissolution action. This court will determine whether sanctions, including attorney fees, are appropriate, and if so, the amount thereof. Under Nebraska law, the general rule is each party pays his or her own attorney fees. Such fees "may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery." *Dycus v. Dycus*, 949 N.W.2d 357, 368 (Neb. 2020). A uniform course of procedure exists to award attorney fees in actions to dissolve a marriage. *See id*. However, the fees Mrs. Glodowski seeks were incurred in this bankruptcy case, not in a dissolution case. The fees are sought pursuant to Bankruptcy Rule 9011, not under state law. The state court is not the proper court to determine whether debtor's conduct in this case warrants sanctions. It also has no interest in deterring improper bankruptcy filings.

In seeking sanctions, Mrs. Glodowski relies upon Bankruptcy Rule 9011 and not upon the court's equitable powers under 11 U.S.C. § 105. Therefore, sanctions cannot be imposed pursuant to § 105. *See, e.g., In re Crofford*, 301 B.R. 880, 885 (B.A.P. 8th Cir. 2003) ("[T]he imposition of sanctions should be limited to the authority pursuant to which notice of the possibility of sanctions was issued.").

Rule 9011 "contains procedural safeguards to [e]nsure that fees are not awarded unless a party, and its counsel, are given notice of the specific pleadings and actions that the movant contends are sanctionable." *Seimer v. Nangle (In re Nangle)*, 281 B.R. 654, 660 (B.A.P. 8th Cir. 2002). The rule requires reasonable notice and an opportunity to respond. *See* Fed. R. Bankr. P. 9011(c). Before a motion for sanctions is filed the offending persons must be given 21 days to withdraw or correct the sanctionable filing.

---

[2] The total amount stated herein does not include $337.50 in fees Mr. Peterson testified were incorrectly billed to Mrs. Glodowski. The primary expense was $428.40 paid to a court reporter to transcribe debtor's testimony at his 341 meeting.

*Id.* § 9011(c)(1)(A). The safe harbor does not apply in this case because the questionable conduct is the filing of a bankruptcy petition.

> The filing of a petition has immediate serious consequences, including the imposition of the automatic stay under § 362 of the Code, which may not be avoided by the subsequent withdrawal of the petition. In addition, a petition for relief under chapter 7 or chapter 11 may not be withdrawn unless the court orders dismissal of the case for cause after notice and a hearing.

*Id.* § 9011 (Advisory Committee Notes, 1997). If the court determines sanctionable conduct occurred, it may impose appropriate sanctions against the responsible attorney, law firm, or party. *See id.* § 9011(c).

"Violations of Rule 9011 are determined by applying an objective standard of reasonableness under the circumstances." *Williams v. Living Hope Southeast (In re Living Hope Sw. Med. Servs.)*, 525 B.R. 95, 100 (B.A.P. 8th Cir. 2015). Sanctions must be "appropriately tailored to the situation" and "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Bankr. P. § 9011(c)(2). If the sanction is attorney's fees, the fees must be "incurred as a direct result of the violation." *Id.; see also In re Living Hope*, 525 B.R. at 105 ("Under section (c)(2), which concerns an award of attorney's fees or other expenses in the context of sanctions, there are requirements of: (1) 'on motion'; (2) 'and warranted'; (3) 'for effective deterrence'; and (4) 'incurred as a direct result of the violation.'").

Because the allegedly sanctionable conduct is the filing of the petition, the reason debtor filed and the outcome the debtor sought to achieve are important factors. Generally,

> One of the primary purposes of the Bankruptcy Act is to '*relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes*.' This purpose of the act has been again and again emphasized by the courts as being of public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.

*Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S. Ct. 695, 699, 78 L. Ed. 1230 (1934) (emphasis added) (citations omitted).

Movant met her burden of proof to establish this case was filed for an improper purpose, including to delay the divorce and to increase costs. Debtor was not insolvent. He was not under the weight of oppressive indebtedness. He did not require a fresh start. As Mr. Peterson testified, debtor's filing bankruptcy simply "did not make sense". In addition, debtor was found to have knowingly and fraudulently represented his assets. His misrepresentations, and his motion to dismiss after the trustee filed a motion to sell assets indicate he did not intend to surrender his property for distribution as required in a Chapter 7 case.

4

Debtor did not testify. In his resistance, debtor asserts he filed bankruptcy "to provide for the proper administration of his assets and protect his creditors and himself from what he believed were unsubstantiated claims of his wife who was divorcing him." It is not clear how filing bankruptcy protected debtor's creditors, most of whom were oversecured. His only significant unsecured creditor was his wife, who claimed her share of the marital estate and contributions she alleged she made to non-marital property. As to unsubstantiated claims, the dissolution case had not yet been tried. If debtor was not satisfied with the state court's decisions, his remedy was to appeal, not to seek unnecessary relief in the bankruptcy court. The bankruptcy filing delayed the dissolution and constituted an attempt to obtain leverage or to change what debtor believed might involve an undesired outcome. Under the circumstances, sanctions are appropriate. *See, e.g., Ebersold v. DeLaughter (In re DeLaughter)*, 213 B.R. 839, 841 (B.A.P. 8th Cir. 1997) (affirming sanctions where debtor filed an amended plan and pursued it to confirmation for the improper purpose of "needlessly delaying the state court action, increasing the costs of litigation, and provid[ing] [the Debtor] with leverage in the dissolution case.").

In his resistance debtor also contends he intended to file a reorganization case. However, no need to reorganize is apparent or was suggested. Debtor signed all schedules and was represented by bankruptcy counsel. He testified at a 341 meeting and did not indicate he was in the wrong chapter. The Chapter 7 trustee informed debtor assets had to be turned over to be liquidated. Debtor was clearly aware he was in a Chapter 7 liquidation case. He only sought dismissal after the trustee filed a motion to sell assets to his wife.

Debtor asserts Mrs. Glodowski is seeking fees to fund the dissolution action. In a marital dissolution, each spouse must determine the nature and extent of the parties' assets and the value thereof. He reasons Mrs. Glodowski would have incurred fees for similar work even if he had not filed the bankruptcy case. Debtor's position lacks merit. Although issues regarding assets overlap, Mrs. Glodowski was forced to pay two attorneys, one for her dissolution action and one for the bankruptcy case. Mr. Peterson is not Mrs. Glodowski's divorce attorney. He does not practice divorce law. The time he spent was solely to represent Mrs. Glodowski in this bankruptcy case. There was no evidence the time Mr. Peterson invoiced will materially benefit Mrs. Glodowski with her divorce. In addition, Mr. Peterson relied upon information compiled by Mrs. Glodowski's divorce attorney. He did not recreate all the work.

Debtor next argues sanctions are not appropriate because Mrs. Glodowski voluntarily provided information to the trustee. As such, she voluntarily incurred attorney's fees. However, if Mr. Glodowski accurately completed his schedules or timely corrected them, the additional work Mr. Peterson performed, whether voluntarily, would not have been necessary. Debtor provided accurate information in discovery in the divorce case. He should have done the same in his bankruptcy case.

Finally, Debtor asserts Mrs. Glodowski could have avoided paying some of the attorney's fees in this case if she filed a motion for relief when the case was filed. Mr. Glodowski also could have filed a motion for relief. Even if such a motion had been filed, it would

5

not end this case. Mrs. Glodowski would still have to pay her divorce attorney to represent her in state court and Mr. Peterson to protect her interests in bankruptcy court. Ultimately, Debtor decided to bring his marital dissolution to the bankruptcy court. He cannot shift responsibility for his choices to Mrs. Glodowski.

Mrs. Glodowski is only entitled to fees directly caused by the filing of the petition. Fees incurred in resisting debtor's motion to dismiss or in her attempt to purchase estate assets were not directly caused by the filing. Therefore, the $17,706.50 in attorney fees requested is reduced by $5,564.50.[3] In addition, there is a basis to question whether the purchase price Mrs. Glodowski offered was fair or whether she was attempting to obtain her own leverage or advantage in dividing the parties' assets.

As the prevailing party, Mrs. Glodowski is entitled to recover the reasonable expenses and attorney's fees incurred to present the motion. *See* Fed. R. Bankr. P. 9011(c)(1)(A). The $17,706.50 in invoiced fees includes fees to present the motion for sanctions. However, the invoices do not include time to present testimony at the hearing on the motion for sanctions, which lasted just over two hours. Therefore, Mrs. Glodowski is awarded an additional $450.00 for the time associated with the hearing. She is also awarded $444.00 in expenses, $428.40 of which was to transcribe debtor's 341 testimony. The testimony was offered at the hearing and relied upon in this opinion.

All the fees incurred and awarded are warranted for effective deterrence by others similarly situated and are reasonable. Mr. Peterson's hourly rate is commensurate with his level of experience. His work is sufficiently described and itemized. The individual time entries were a necessary part of his representation of Mrs. Glodowski.

Mrs. Glodowski's motion for sanctions is GRANTED. She is awarded attorney's fees of $12,592.00 plus expenses of $444.40. Separate judgment will be entered.

   Dated: March 10, 2021

              BY THE COURT:

              /s/ Brian S. Kruse
              Brian S. Kruse
              United States Bankruptcy Judge

Notice given by the court to:
*Trev Peterson
Richard Register

Movant (*) is responsible for giving notice to other parties if required by rule or statute.

---

[3] The reduction consists of $757.00 billed on October 12 and 13; the entire November 2020 invoice of $2,062.50; $1,305.00 billed in December 2020; and $1,440 billed in January 2021, all of which were incurred resisting the motion to dismiss and to purchase assets from the estate.